IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

QUINN NGIENDO,

    Plaintiff,

    v.

UNIVERSITY PARTNERS, LLC, et al.,

    Defendants.

Case No. 2:20-cv-02393-HLT-TJJ

## MEMORANDUM AND ORDER

Plaintiff Quinn Ngiendo is pro se and brings several Fair Housing Act ("FHA") and state claims stemming from her time in two apartment complexes.[1] Plaintiff's claims center on discrimination based on disability, race, and national origin. Plaintiff filed her second amended complaint against University Partners, LLC ("University Partners"), Cardinal Group Management Midwest, LLC ("Cardinal"), Everest Campus West, LLC ("Everest"), Asset Campus USA, LLC ("Asset"), and Waypoint Rockland West Owner, LLC ("Waypoint").[2] Doc. 85.

University Partners, Asset, and Everest move to dismiss the federal claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[3] Docs. 87, 89, 91. For the following reasons, the Court agrees that Plaintiff fails to state a claim against University Partners, Asset, and Everest for failure to accommodate her post-traumatic stress disorder ("PTSD"). Plaintiff also fails to state a claim against University Partners for failure to accommodate her shoulder and back injuries.

---

[1] The Court is mindful of Plaintiff's pro se status and liberally construes her pleadings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not assume the role of advocate. *Id.* Plaintiff asserts diversity jurisdiction, but she has not pleaded the citizenship of Defendants' members, so she has not met her burden to establish federal jurisdiction via that route. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) (holding that an LLC takes the citizenship of all its members); *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (holding that the party seeking a federal forum bears the burden of proof).

[2] Plaintiff has not yet served Waypoint. Doc. 85 at 1.

[3] Cardinal answered the complaint and did not move to dismiss. Doc. 95.

Additionally, Plaintiff fails to state a racial or national origin discrimination claim against University Partners or Everest. Plaintiff has, however, sufficiently alleged that Asset and Everest failed to accommodate and retaliated against her based on her rhinitis. Finally, Plaintiff has pleaded cognizable claims for disparate treatment based on race and national origin against Asset. The following federal claims thus remain in this case against the moving parties: (1) failure to accommodate Plaintiff's rhinitis under the FHA against Asset and Everest, (2) retaliation under the FHA against Asset and Everest, (3) disparate treatment based on race and national origin against Asset, and (4) state law claims against University Partners, Asset, and Everest.

## I. BACKGROUND[4]

On September 22, 2017, Plaintiff entered a term lease with Asset for an apartment at "The Connection." Doc 85 at 2, ¶ 10. Plaintiff has rhinitis, which is triggered by allergens such as mold. *Id.* at 2, ¶¶ 15–16. Before renting, Plaintiff asked Asset either to let her see the unit she would be assigned to or to inspect the unit for mold. *Id.* 2, ¶ 13. Plaintiff informed Asset that she had rhinitis and needed a housing accommodation under federal law because she can't be around triggers like mold and dust. *Id.* at 2, ¶¶ 14, 17. Asset refused to show Plaintiff the actual unit she would occupy because it has a policy of not showing actual units to prospective tenants. *Id.* at 3, ¶ 21. Asset then placed Plaintiff in a black mold-infested unit. *Id.* at 3, ¶ 20. Plaintiff believes this was retaliation for seeking a disability accommodation. *Id.* Plaintiff was again rebuffed by Asset when she tried to rectify the situation. *Id.* at 4, ¶¶ 35–36. Asset refused to clean the unit to accommodate Plaintiff's rhinitis because it had a policy that barred staff from cleaning apartments. *Id.* at 4, ¶ 36.

---

[4] For purposes of the pending motions to dismiss, the Court accepts as true Plaintiff's well-pleaded factual allegations.

Plaintiff is black, and her nation of origin is Kenya. *Id.* at 3, ¶ 26. Her roommates were from China and India. *Id.* at 3, ¶ 28. Plaintiff noticed that while they were in a moldy and filthy apartment, white tenants had better housing. *Id.* at 3–4, ¶¶ 29–33. Plaintiff believed that Asset was targeting minority races and those with foreign origins out of animus. *Id.*

Plaintiff also has PTSD, which makes her sensitive to noise. *Id.* at 5, ¶ 42. Due to the noisy housing environment, Plaintiff suffered anxiety and flashbacks. *Id.* at 7, ¶ 65. Plaintiff perceived her life was in constant danger. *Id.* Noises came from neighbors' wall tapping, stomping, running, and dropping heavy objects on her roof. *Id.* at 7, ¶¶ 65, 67. Plaintiff also believed that Asset employees were stomping, jumping, and dropping heavy objects to intimidate her. *Id.* at 5, ¶ 41. Asset did not stop the neighbors from making noise. *See id.* at 7, ¶ 67. Plaintiff was treated with psychotropic medication by psychiatrists and received psychotherapy treatments that are still ongoing. *Id.* at 9, ¶ 79.

In April 2019, University Partners took over as owner and manager of "The Connection." *Id.* at 9, ¶ 1. Plaintiff asked University Partners to accommodate her PTSD and intervene in her neighbors' noisemaking. *See id.* at 9, ¶ 4. University Partners did not intervene. *See id.* at 10, ¶¶ 5–6. In April or May of 2019, Plaintiff injured her right shoulder while pushing her key into her bedroom door keyhole. *See id.* at 11, ¶¶ 19–21. Plaintiff believes an Asset employee had attempted to lock her out by tampering with her bedroom door because Plaintiff had not evacuated the apartment yet. *See id.* at 11, ¶¶ 19–20. Plaintiff developed adhesive capsulitis, which is also known as "frozen shoulder." *See id.* at 11, ¶¶ 21–22. The frozen shoulder was very painful and physically limiting. *Id.* In July 2019, Plaintiff had not renewed her lease. *Id.* at 11, ¶ 23. She requested a lease renewal because she was right-handed, had an injured right shoulder, and needed her belongings to stay where they were. *See id.* at 12, ¶¶ 24–25. Plaintiff was still forced to move out because her

lease had expired, and she was evicted by housing court. *Id.* at 12, ¶¶ 25–26. Plaintiff believes that her denial of a new lease was motivated by hostility towards her race and national origin. *Id.* at 12, ¶ 32.

Plaintiff also has a back problem, which causes limping. *Id.* at 13, ¶ 40. Plaintiff believes that when University Partners sprinkled water on the sidewalks while watering the lawn it was discriminating against handicapped individuals. *Id.* at 13, ¶ 39. Plaintiff also had to go around a welcome desk on the sidewalk, which caused her to trip and nearly fall. *Id.* at 13, ¶¶ 40–41. Finally, Plaintiff also suffered a barrier when a "mega school bus" would block handicap access from the bus stop to the property. *Id.* at 13, ¶ 43.

After University Partners evicted Plaintiff, she moved to new housing in September. *See id.* at 14, ¶ 3; 19 ¶ 39. Everest managed this housing property. *Id.* at 14, ¶¶ 2–3. When Plaintiff submitted her rental application, she provided a list of housing accommodation requests, including for her rhinitis and her PTSD. *Id.* at 14, ¶¶ 4–5. Plaintiff was not allowed to inspect her unit before renting due to Everest's policy of showing a model apartment to prospective tenants. *Id.* at 15, ¶ 9. Plaintiff was assigned to a dirty unit with water damage and black mold everywhere. *Id.* at 15, ¶ 11. Plaintiff asked Everest's assistant property manager to remove the mold and clean her unit to accommodate her rhinitis. *See id.* at 15, ¶ 16. Everest just painted over the black mold. *See id.* at 16, ¶ 17. Plaintiff experienced many physical ailments from the mold. *See id.* at 19, ¶¶ 45–46. Her symptoms included asthma, wheezing, coughing, a clogged nose, and various skin and stomach conditions. *Id.* In October, Plaintiff was unable to use her kitchen and living room due to leaking water, and she believes Everest intentionally delayed maintenance because she had previously sought an FHA accommodation for her disabilities. *See id.* at 19, ¶ 40.

4

Once again, Plaintiff's dwelling was noisy due to stomping, jumping, running, and dropping heavy objects. *Id.* at 16, ¶ 18. Over the weekend, there were parties until 4 a.m. as well. *Id.* Additionally, Plaintiff had an upstairs neighbor who started harassing her. *Id.* at 17, ¶ 27. The neighbor was involved in the general noisemaking, and Plaintiff started calling the police every day. *Id.* at 16, ¶ 23. The neighbor started kicking and knocking on Plaintiff's door, blocking her path in hallways, and lecturing Plaintiff for calling the police. *Id.* The neighbor called Plaintiff a racial epithet and told Plaintiff that she was too old and needed to move into a retirement home. *Id.* at 18, ¶ 37. The neighbor stabbed Plaintiff's door and left knife marks on it. *Id.* at 17, ¶ 28. Plaintiff believes that the neighbor intended to attack her and stab her. *Id.* at 17, ¶ 31. Plaintiff also believes that the neighbor's harassment was racially motivated because the neighbor also vandalized another black tenant's car by scratching a racial epithet into it with a knife. *Id.* at 17, ¶ 25. Plaintiff believes that Everest knew about all the neighbors' harassment activities. *Id.* at 17, ¶ 25. Everest did not remove the neighbors from housing. *Id.*

Plaintiff approached Everest several times about an accommodation for her PTSD. *Id.* at 20, ¶ 52. Again, Everest did not remove the neighbors. *Id.* at 20–21, ¶ 52. Plaintiff needed treatment with psychotherapy and psychotropic medications to cope with the housing environment. *Id.* at 20, ¶ 49. At some later point in the lease, Plaintiff's apartment suffered more water damage, leading to more mold, and Everest painted over the mold again. *Id.* at 21–22, ¶¶ 57–58.

Cardinal took over management of the property in the summer of 2020, and it evacuated Plaintiff from the unit because of the mold. *Id.* at 22, ¶ 59. By that time, Plaintiff had a black mold condition and distressed lungs that required several visits to the emergency room and aggressive treatment. *Id.* at 22, ¶ 60.

## II.   STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While the 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citation omitted).

## III.   ANALYSIS

Plaintiff's amended complaint is difficult to construe. Mindful of the liberal construction due pro se litigants, the Court construes Plaintiff's federal claims in the following manner: (1) FHA accommodation claims for PTSD against Asset, University Partners, and Everest; (2) FHA accommodation claims for rhinitis against Asset and Everest; (3) FHA accommodation claims for shoulder and back disabilities against University Partners; (4) retaliation for seeking an accommodation under the FHA against Asset and Everest; (5) FHA disparate treatment claims against Asset and University Partners based on race and national origin; and (6) a hostile housing environment based on race against Everest.[5] The Court addresses Plaintiff's claims in turn.

### A.   Failure to Accommodate Disability Under the FHA

The FHA makes it unlawful for housing providers to discriminate against any person in the terms, conditions, or privileges of rental of a dwelling because of a handicap of that person. 42

---

[5]   This characterization is generally how the parties have formulated Plaintiff's claims in their motions. Plaintiff has never contested these characterizations. Docs. 103. 105, 107. The Court agrees with these characterizations.

U.S.C. § 3604(f)(2). Prohibited discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). Claims thus survive a motion to dismiss if the plaintiff plausibly alleges the following elements: (1) the plaintiff is handicapped as defined by the FHA, (2) the defendant knew or reasonably should have known of the claimed handicap, (3) an accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling, (4) the accommodation is reasonable, and (5) the defendant refused to make the accommodation. *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016) (citing *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir.2006)).

### 1. PTSD

Plaintiff asserts Asset, University Partners, and Everest failed to accommodate her PTSD under the FHA. *See, e.g.*, Doc. 85 at 5, 9–10, 14, 16–17. As outlined above, one element of this claim is whether the accommodation sought by a handicapped individual is reasonable. *See Arnal*, 226 F. Supp. 3d at 1183. Nowhere in her second amended complaint does Plaintiff plausibly allege that she sought a reasonable accommodation. Rather, she gives conclusory assertions that Defendants failed to "intervene" or "remove neighbors excessive noise violence and harassments that came with them." Doc. 85 at 5, 9, 20–21. To the extent that Plaintiff alleges that Defendants should have evicted her neighbors because they were making noise, she fails to allege a reasonable accommodation. *Cf. Poursaied v. Rsrv. at Rsch. Park LLC*, 379 F. Supp. 3d 1182, 1189 (N.D. Ala. 2019) ("[P]laintiff seeks a sound proof apartment . . . no apartment owner would be able to accommodate such a request."). While Plaintiff is not required to establish a prima facie case at

7

the motion to dismiss stage, she must allege some facts that allow the Court to infer in her favor. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1274–75 (10th Cir. 2019). Accordingly, the Court dismisses the PTSD accommodation claims against Asset, University Partners, and Everest under Rule 12(b)(6) for failure to state a claim. These claims are dismissed without prejudice.

### 2. Rhinitis

Plaintiff asserts Asset and Everest failed to accommodate her rhinitis under the FHA. *See, e.g.*, Doc. 85 at 2–3, 14–15. The Court looks to the elements of the cause of action to determine whether this claim is plausible. *Khalik*, 671 F.3d at 1192.

First, Plaintiff must be handicapped under the FHA. *See Arnal*, 226 F. Supp. 3d at 1183. The FHA defines handicap as (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 3602(h). The regulations define major life activities to include functions such as breathing. 24 C.F.R. § 100.201(b). Plaintiff pleads that she has allergic rhinitis, that mold is one of her triggers, and that exposure to mold resulted in several emergency room visits and the need for aggressive treatment. Doc. 85 at 2, 22. It is thus plausible that Plaintiff's rhinitis qualifies as a handicap under the FHA.

Second, Plaintiff must allege that Defendants knew or should have known that she was handicapped. *See Arnal*, 226 F. Supp. 3d at 1183. Plaintiff alleges she told both Asset and Everest about her rhinitis. Doc. 85 at 2, 14. Third, Plaintiff plausibly alleges that an accommodation may be necessary to afford her equal opportunity to use and enjoy the dwelling because mold triggers her rhinitis, and exposure to mold has led to several hospital trips. *See Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012) ("[Necessary] implies more than something merely helpful or conducive. It suggests instead something 'indispensable,'

'essential,' something that 'cannot be done without.'" (citation omitted)). Fourth, Plaintiff must have sought a reasonable accommodation for her handicap. *Arnal*, 226 F. Supp. 3d at 1183. Plaintiff plausibly alleges that she asked Asset and Everest either to let her inspect her unit of occupancy or to ensure her unit did not have mold. *See* Doc. 85 at 2, 15. Plaintiff also asked for mold removal services when she discovered that her assigned unit had mold. *See id.* at 4, 15. She alleges a reasonable request. *Cf. Beverly v. GatesHudson*, 2021 WL 1842706, at *4 (E.D. Va. May 6, 2021) (holding it was reasonable for an individual with a respiratory handicap to seek a living arrangement free from pet waste). Lastly, Plaintiff plausibly alleges that Asset refused to allow her to inspect her unit or clean her unit, and Everest refused to allow her to inspect the unit. *See* Doc. 85 at 2–4, 15.

Asset and Everest make several arguments for the dismissal of Plaintiff's FHA rhinitis accommodation claims. Asset argues that the FHA does not apply to Plaintiff at all because her claims deal with the use and enjoyment of property rather than the accessibility or acquisition of rental property. Doc. 90 at 5. Asset misstates the law. The Tenth Circuit has already applied the FHA to a rental's use and enjoyment. *See Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993). Relatedly, Everest argues that the FHA does not apply to a series of housing maintenance concerns. Doc. 92 at 6. Everest is correct that a lack of housing maintenance does not usually give rise to an FHA claim. *See Beverly*, 2021 WL 1842706 at *4. Here, however, Plaintiff was seeking an exception to Asset's and Everest's general policy of not showing actual units to prospective tenants (and Asset's policy of not cleaning units). *See* Doc. 85 at 3–4, 15. The statute's plain meaning requires landlords to make "reasonable accommodations" to their general policies. 42 U.S.C. § 3604(f)(B). An accommodation to a policy requires "adaption" or "adjustment." The American Heritage Dictionary of the English Language 8 (1st ed. 1969). The Court is cognizant that the FHA

9

does not mediate every housing dispute between landlords and tenants. But on the specific facts of this case, Plaintiff has alleged enough to survive a motion to dismiss.

Finally, Asset further argues that Plaintiff is not handicapped under the FHA because she has not pleaded sufficient facts to show that her disability substantially limits a major life activity. Doc. 90 at 10. At this stage, however, Plaintiff does not need to establish a prima facie case in her complaint. *Khalik*, 671 F.3d at 1192. Plaintiff has pleaded that her allergic rhinitis is triggered by mold and has resulted in several emergency room visits, and thus it is plausible that her rhinitis is a handicap under the FHA. Accordingly, the Court declines to dismiss Plaintiff's rhinitis accommodation claims under the FHA.

### 3. Back and Shoulder Injuries

Plaintiff claims that University Partners failed to accommodate her frozen shoulder and sciatica nerve problems. Doc. 85 at 11–14. The Court turns to the frozen shoulder claim first. Plaintiff pleads that she should have been allowed to remain as a holdover tenant because of her shoulder condition. Doc. 85 at 11–12. As previously noted, an FHA accommodation claim requires that Plaintiff request a reasonable accommodation. *See Arnal*, 226 F. Supp. 3d at 1183. Plaintiff cites no authority, and the Court is aware of none, holding that a holdover tenant can remain on a property indefinitely due to a physical handicap. *Cf. Salisbury v. City of Santa Monica*, 998 F.3d 852 (9th Cir. 2021) (holding the FHA applies to rentals only when the rental arrangement is supported by adequate consideration). Thus, Plaintiff has not plausibly alleged a reasonable accommodation.[6]

---

[6] Plaintiff's FHA shoulder accommodation claim has another major flaw. She does not plead any facts in her second amended complaint regarding the extent of her shoulder injury from putting her key in a keyhole. She describes the injury as "very physically limiting and painful" and claims that it "interferes with one or more major activities of daily living" for the past fourteen months. Doc. 85 at 11. This is a threadbare recital of an FHA claim element supported by a conclusory statement. *Bekkem*, 915 F.3d at 1274. Plaintiff needs to allege enough facts for her claim to be plausible, and she has failed to do that.

This is Plaintiff's third attempt at asserting a federal claim related to her shoulder injury. *See* Docs. 1, 6, 85. Even with a pro se plaintiff, the Court may dismiss claims with prejudice when amendment would be futile. *See Hall*, 935 F.2d at 1110. Because Plaintiff's only requested accommodation was to remain as a holdover tenant, the Court dismisses this claim with prejudice.

Next, Plaintiff's FHA claim based on her sciatica nerve fails for a litany of reasons. The Court again looks to the elements of the cause of action to illustrate the shortcomings. *See Arnal*, 226 F. Supp. 3d at 1183. First, Plaintiff merely pleads that her back problem causes a limp, and she pleads no facts that would permit the Court to infer that her back problem substantially limits a major life activity. Second, she does not plausibly allege that University Partners knew or should have known she was handicapped. She complained about a welcome desk on the sidewalk, sprinklers getting water on the sidewalk, and a "mega bus" "blocking" access to the rental property. Doc. 85 at 12–14. She does not allege that she informed University Partners that she was disabled due to her sciatica nerve problem. Third, Plaintiff has not pleaded facts to show that an accommodation was necessary. One incident of tripping while going around a welcome desk and being inconvenienced by wet sidewalks or long buses do not make an accommodation necessary. *See Cinnamon Hills*, 685 F.3d at 923 ("[Necessary] implies more than something merely helpful or conducive. It suggests instead something 'indispensable,' 'essential,' something that 'cannot be done without.'" (citation omitted)). Plaintiff thus fails to state a claim under the FHA for her back problems.

This is Plaintiff's third attempt at asserting a federal claim related to her sciatica nerve condition. Docs. 1, 6, 85. "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110. The Court dismisses this claim with prejudice because further

amendment would be futile. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

### B. Retaliation Under the FHA

Plaintiff next alleges that Asset and Everest retaliated against her for seeking an accommodation under the FHA for her rhinitis.[7] Doc. 85 at 3, 19. Under the FHA, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. Plaintiff thus states an FHA retaliation claim by showing that (1) she was engaged in protected activity; (2) she suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal link between the two. *Arnal*, 226 F. Supp. 3d at 1187–88 (citing *Dubois*, 453 F.3d at 1180).

Here, Plaintiff asked Asset and Everest either to let her inspect her unit of occupancy or to ensure her unit did not have mold. *See* Doc. 85 at 2, 15. Plaintiff also asked for mold removal services when she discovered that her assigned unit had mold. *See id.* at 4, 15. Thus, Plaintiff plausibly alleges the first element of an FHA retaliation claim because seeking an accommodation is protected activity. *See Arnal*, 226 F. Supp. 3d at 1188 (noting that seeking an accommodation qualifies as protected activity for purposes of summary judgment).

Second, Plaintiff pleads that she was placed in a moldy unit by both Asset and Everest. *Id.* at 3, 15, 19. She also pleads that Everest delayed housing maintenance for water damage in retaliation for her seeking a disability accommodation. *Id.* at 19. Placing someone in an extremely moldy apartment and delaying housing maintenance can qualify as an adverse action under the

---

[7] Plaintiff accuses Asset and Everest of retaliation for a litany of reasons, but this string of bases is mentioned only in passing. *See* Doc. 85 at 5, 19. The Court finds sufficient allegations to analyze a potential rhinitis accommodation retaliation claim, but the Court will not go further and become Plaintiff's advocate. *Hall*, 935 F.2d at 1110.

12

FHA. *Cf. Chavez v. Aber*, 122 F. Supp. 3d 581, 600 (W.D. Tex. 2015) (filing suits for eviction, calling Animal Control services, and refusing to offer a renewed lease with terms like non-disabled tenants constituted "adverse action" by landlord under the FHA).

Third, and finally, Plaintiff alleges that these adverse actions happened in close temporal proximity to her seeking disability accommodations. *See* Doc. 85 at 2–3, 14–15, 19. She was placed in a moldy apartment directly after requesting an accommodation for rhinitis, and her maintenance needs at Everest occurred in October (only one month after she moved in and requested that the mold be cleaned up). *See id.* When "protected conduct is closely followed by the adverse action, courts have often inferred a causal connection." *Bekkem*, 915 F.3d at 1271. Plaintiff has thus stated a claim under the FHA for retaliation based on her seeking accommodations for her rhinitis.

Asset and Everest make arguments to the contrary. First, Asset and Everest argue that Plaintiff's allegations are too conclusory to survive a motion to dismiss. Doc. 92 at 9; Doc. 90 at 7–9. Asset and Everest improperly discount the timing aspect in Plaintiff's pleadings. The timing of Plaintiff's requests and the alleged retaliatory actions are sufficient to infer retaliation at this stage. *Bekkem*, 915 F.3d at 1271. Second, Asset argues that retaliation requires intentional discrimination based on Plaintiff's class. Doc. 90 at 7–8. Asset is primarily relying on old unpublished caselaw. Retaliation claims do not focus on who a plaintiff <u>is</u>, but on what a plaintiff <u>does</u>. Retaliation can occur even when there are no other violations of the FHA. *See Arnal*, 226 F. Supp. 3d at 1188.

### C. Discrimination Based on Race and National Origin Under the FHA

Plaintiff brings national origin and/or racial discrimination claims against Asset, University Partners, and Everest. *See* Doc. 85 at 3–4, 12, 16–18. The Court construes the claims against Asset

13

and University Partners as FHA disparate treatment claims and the claim against Everest as an FHA hostile housing environment claim. It is unlawful under the FHA to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color . . . or national origin." 42 U.S.C. § 3604(b).

### 1. Disparate Treatment

Plaintiff claims that Asset and University Partners intentionally discriminated against her because of her race and national origin. *See* Doc. 85 at 3–4, 12. To establish a claim for disparate treatment based on race or national origin under the FHA, Plaintiff must allege the following:

> (1) she is a member of a protected class; (2) she was denied a rental relationship or otherwise treated differently in the terms, conditions, or privileges of her rental relationship or in the provision of services or facilities to her as a tenant; and (3) the different treatment was, at least in part, because of her [protected class].

*Wilson v. Guardian Mgmt., LLC*, 383 F. Supp. 3d 1105, 1108 (D. Or. 2019) (citing 42 U.S.C. § 3604(b)).

The Court addresses Plaintiff's claims against Asset first. Plaintiff alleges that she is black with Kenyan origins. Doc. 85 at 3. She further alleges that she and her minority roommates were rented a filthy moldy apartment, and white tenants had better housing. *Id.* at 3–4. She has thus plausibly alleged claims based on race and national origin against Asset because she has connected her terrible living conditions to her race and national origin with something besides sheer speculation. *Cf. Bekkem*, 915 F.3d at 1274–75. Asset once again argues that Plaintiff must plead further facts showing it had racial animus against her. Doc. 90 at 13–14. Asset is incorrect. A complaint does not need to conclusively establish a prima facie case of discrimination to avoid dismissal. *Bekkem*, 915 F.3d at 1274. The Court declines to dismiss these claims.

The Court turns to Plaintiff's claims against University Partners. Plaintiff pleads in a single paragraph that University Partners' refusal to let her remain as a holdover tenant was partially motivated by her race and national origin. Doc. 85 at 12. Plaintiff's allegation improperly relies on sheer speculation. *Bekkem*, 915 F.3d at 1274–75. She thus fails to state a claim for disparate treatment under the FHA against University Partners. Accordingly, Plaintiff fails to state a cognizable claim under Rule 12(b)(6). The Court dismisses these claims without prejudice.

### 2. Hostile Housing Environment

Plaintiff claims that Everest racially discriminated against her by allowing a hostile housing environment. Doc. 85 at 16–18. Plaintiff must plausibly plead the following to state a claim: (1) she is a member of a protected class, (2) she experienced unwelcome conduct, (3) the conduct was based on her protected characteristic, (4) the conduct was sufficiently severe or pervasive to alter her living conditions and create an abusive environment, and (5) Everest knew or should have known about the unwelcome conduct. *Smith v. Mission Assocs. Ltd. P'ship*, 225 F. Supp. 2d 1293, 1299 (D. Kan. 2002).[8]

Plaintiff fails to plead any facts indicating that Everest knew or should have known about race-based harassment by Plaintiff's upstairs neighbor. She pleads generally that Everest "knew about" all her neighbors' "harassment activities" and that the incidents with her upstairs neighbor were "brought to its attention." Doc. 85 at 17–18. These are conclusory statements that are not entitled to the presumption of truth. Plaintiff fails to include facts establishing that Everest knew

---

[8] The Court is aware that a circuit split is developing on when a landlord can be held liable to a tenant for a hostile environment created by other tenants. *Compare Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021) (en banc) (holding that a plaintiff generally fails to state a claim under the FHA for intentional discrimination when the landlord fails to respond to reports of race-based harassment by a fellow tenant), *with Wetzel v. Glen St. Andrew Living Cmty.*, LLC, 901 F.3d 856 (7th Cir. 2018) (holding that a landlord is liable under the FHA when it has actual notice of tenant-on-tenant harassment based on a protected status). The Tenth Circuit has not yet extended its hostile housing environment analysis to tenant-on-tenant conduct. *See Honce*, 1 F.3d at 1090 (applying hostile environment analysis to a landlord's own conduct). The Court uses the claim elements set forth in *Smith* because Plaintiff fails to state a claim even under that more generous standard.

15

about the neighbor's racial harassment. For example, did Plaintiff tell Everest about the racial harassment? Did she merely complain about all her neighbors making noise? Plaintiff does not say, and the Court cannot provide the facts for her. *See Hall*, 935 F.2d at 1110. And the fact that police were involved in her confrontations with her upstairs neighbor does not allow the Court to infer that Everest knew about racial harassment by a particular neighbor. *See* Doc. 85 at 16–17. Accordingly, Plaintiff fails to state a cognizable claim under Rule 12(b)(6). The Court dismisses this claim without prejudice.

### D. State Claims

University Partners, Asset, and Everest argue that Plaintiff's state law claims should be dismissed in the interest of judicial economy. Doc. 88 at 6; Doc. 90 at 16–17; Doc. 92 at 9–10. The Court declines to dismiss Plaintiff's state law claims because the Court has not dismissed all her federal claims.[9] *See* 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendant Asset's Motion to Dismiss (Doc. 89) is GRANTED in part and DENIED in part. The Court grants the motion as to Plaintiff's claim under the FHA for failing to accommodate her PTSD. This claim is DISMISSED WITHOUT PREJUDICE. The Court denies the motion as to Plaintiff's claims under the FHA for retaliation and failure to accommodate Plaintiff's rhinitis, Plaintiff's claims under the FHA for disparate treatment based on race and national origin, and her state law claims.

THE COURT FURTHER ORDERS that Defendant University Partners' Motion to Dismiss (Doc. 87) is GRANTED in part and DENIED in part. The Court grants the motion as to

---

[9] The Court recognizes that all federal claims against University Partners have been dismissed. But University Partners' passing request for the Court to dismiss any state law claims against it does not explain why those claims are not part of the same case or controversy as the claims against other Defendants still before this Court. *See* Doc. 88 at 6.

Plaintiff's claims under the FHA for failure to accommodate her PTSD and for disparate treatment based on race and national origin. These claims are DISMISSED WITHOUT PREJUDICE. The Court also grants the motion as to Plaintiff's claims under the FHA for failure to accommodate her frozen shoulder and sciatica nerve condition. These claims are DISMISSED WITH PREJUDICE. The Court denies the motion as to Plaintiff's state law claims.

THE COURT FURTHER ORDERS that Defendant Everest's Motion to Dismiss (Doc. 91) is GRANTED in part and DENIED in part. The Court grants the motion as to Plaintiff's claims under the FHA for failure to accommodate her PTSD and for a hostile housing environment. These claims are DISMISSED WITHOUT PREJUDICE. The Court denies the motion as to Plaintiff's claims under the FHA for retaliation and failure to accommodate her rhinitis. The Court denies the motion as to Plaintiff's state law claims.

IT IS SO ORDERED.

Dated: October 27, 2021                    /s/  *Holly L. Teeter*
                                           HOLLY L. TEETER
                                           UNITED STATES DISTRICT JUDGE