## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

QUINN NGIENDO,

      Plaintiff,

      v.

UNIVERSITY PARTNERS, LLC, et al.,

      Defendants.

Case No. 2:20-cv-02393-HLT-TJJ

## MEMORANDUM AND ORDER

Plaintiff Quinn Ngiendo is pro se and brings several Fair Housing Act ("FHA") and state claims stemming from her time in two apartment complexes.[1] Plaintiff filed her second amended complaint against Defendants University Partners, LLC ("University Partners"), Cardinal Group Management Midwest, LLC ("Cardinal"), Everest Campus West, LLC ("Everest"), Asset Campus USA, LLC ("Asset"), and Waypoint Rockland West Owner, LLC ("Waypoint"). Doc. 85.

This Court previously dismissed some claims against some Defendants. Doc. 111. Now there are several motions pending before the Court. University Partners and Waypoint move to dismiss the pending claim(s) against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Docs. 131, 135. Plaintiff moves to file a surreply to University Partners' motion and for review of the magistrate judge's denial of her motion to extend the time to amend her complaint. Docs. 149, 150. Because Plaintiff fails to allege sufficient facts to state a plausible claim against either University Partners or Waypoint, the Court grants the motions to dismiss. Because Plaintiff's motions do not meet the relevant standards, the Court denies her motions.

---

[1] The Court is mindful of Plaintiff's pro se status and liberally construes her filings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not assume the role of advocate. *Id.*

## I.    BACKGROUND[2]

The Court gave an extensive background to this case in a prior order, so it need not repeat it here. Doc. 111. For purposes of the pending motions by University Partners and Waypoint, the Court highlights or adds the following facts. University Partners was Plaintiff's landlord from April to September 2019. Doc. 85 at 9-14. Plaintiff's neighbors repeatedly stomped, jumped, ran, knocked, or tapped on Plaintiff's walls, and dropped "heavy magnitude" objects. *Id.* at 10, 14, ¶ 12. The noisemaking was never remedied, and it got worse towards the end of Plaintiff's tenancy. *Id.* at 11, ¶ 18. After Plaintiff was evicted from her apartment by University Partners, she sought housing at a property owned by Waypoint. *Id.* at 14, ¶ 3. Waypoint hired real estate agents to manage the property. *See id.* at 27, ¶¶ 1-2.

Once again, Plaintiff experienced noisemaking due to stomping, jumping, running, and dropping heavy objects. *Id.* at 16, ¶¶ 18-19. Plaintiff also experienced harassment by a neighbor. *Id.* at 28, ¶ 4. The neighbor pursued Plaintiff to her dwelling unit with a knife. *Id.* at 28, ¶ 5. Eli Routh, a portfolio manager for Waypoint, asked Plaintiff for a police report upon learning about "several knife stab marks" on Plaintiff's main entrance doorway. *Id.* at 28, ¶ 6. Routh was also made aware via email that Plaintiff's neighbor had scratched a racial epithet into a different black tenant's car. *Id.* at 28, ¶ 7.

## II.    ANALYSIS

Plaintiff's remaining claim against University Partners is for intentional infliction of emotion distress under Kansas law. The Court construes Plaintiff's complaint to assert the following claims against Waypoint: (1) hostile housing environment under the FHA, (2) negligent

---

[2]   For purposes of the pending motions to dismiss, the Court accepts as true Plaintiff's well-pleaded factual allegations.

infliction of emotional distress under Kansas law, and (3) intentional infliction of emotional distress under Kansas law.[3]

A.     University Partners' Motion

Plaintiff argues that University Partners is liable for intentional infliction of emotional distress under Kansas law for failure to remedy the noisy conditions in her apartment complex. *See* Doc. 85 at 10-11. University Partners moves to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).[4] The Court can construe such a motion as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) when it is filed after an answer. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1102 (10th Cir. 2017). Plaintiff responds by arguing that she has clearly stated facts about her injuries, and that University Partners' employees intentionally conspired with her neighbors to cause her harm by prolonged exposure to noise. Doc. 140 at 4.

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While the 12(b)(6) standard does not require that [the plaintiff] establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine

---

[3]   Plaintiff's responses to both University Partners' and Waypoint's motions were a day late. Due to a lack of prejudice to the parties, the Court will construe Plaintiff's responses as containing motions requesting additional time. *See, e.g.*, Doc. 148 (acknowledging that the response was late). Thus, the Court will consider Plaintiff's responses. *See* Fed. R. Civ. P. 6(b). The Court cautions Plaintiff, however, that her pro se status does not excuse her from meeting deadlines and that it might not be as lenient in the future if she misses other deadlines. *Beams v. Norton*, 335 F. Supp. 2d 1135, 1139 (D. Kan. 2004), *aff'd*, 141 F. App'x 769 (10th Cir. 2005) ("Pro se litigants must follow rules of procedure, including local rules.").

[4]   University Partners also challenges the Court's jurisdiction based on the amount in controversy. Doc. 131 at 2-3. Plaintiff attempts to respond, and the Court is ultimately satisfied that it has supplemental jurisdiction over the remaining claim against University Partners. 28 U.S.C. § 1367.

whether [the plaintiff] has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citation omitted).

Plaintiff must plausibly plead intentional infliction of emotional distress using the following elements: (1) the defendant acted intentionally, or in reckless disregard of the plaintiff; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe. Pattern Inst. Kan. Civ. § 127.70 (Kan. Jud. Council 2021). Plaintiff has failed to state a plausible claim. She alleges no facts tending to show that University Partners or its employees acted intentionally or recklessly with regards to her. Plaintiff's conclusory allegations to the contrary are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. Thus, the Court dismisses this claim.

### B.    Waypoint's Motion

Plaintiff brings claims for hostile housing environment based on race and national origin under the FHA and for intentional and negligent infliction of emotional distress under Kansas law. The Court addresses the FHA claims first.

Waypoint moves to dismiss Plaintiff's FHA claims for failure to state a claim based on Plaintiff failing to plead facts showing the "several knife-stab marks incident" was racially motivated and failing to plead that Waypoint was on notice that Plaintiff was being subjected to racial harassment. Plaintiff tries to add a litany of new facts and arguments in her response. But she primarily responds by repeatedly arguing that Waypoint knew or should have known that she was being racially harassed because her harasser was white and her complaint put Waypoint on notice that she was being harassed in violation of the FHA. The standards for granting a motion to dismiss were discussed above.

Plaintiff must plausibly plead a hostile housing environment claim under the following elements: (1) she is a member of a protected class, (2) she experienced unwelcome conduct, (3) the conduct was based on her protected characteristic, (4) the conduct was sufficiently severe or pervasive to alter her living conditions and create an abusive environment, and (5) the defendant knew or should have known about the unwelcome conduct. *Smith v. Mission Assocs. Ltd. P'ship*, 225 F. Supp. 2d 1293, 1299 (D. Kan. 2002).

Here, Plaintiff fails to plausibly allege that Waypoint knew she was subjected to harassment due to her race or national origin. Plaintiff's complaint cannot retroactively put Waypoint on notice that she was being harassed. Plaintiff's conclusory allegation that Waypoint "was even made aware of [her] neighbor['s] pervasive, severe, humiliating, degrading, hostile and physically threatening acts towards plaintiff that it failed to remove such harassment from dwelling" is not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 681. The only facts that Plaintiff specifically alleges as to Waypoint are (1) that Waypoint's Eli Routh requested a police report upon learning there were knife marks on her door, and (2) that she repeatedly emailed Routh that her neighbor had harassed another black resident by vandalizing her car with a racial slur. This is insufficient to plausibly show that Waypoint knew or should have known that Plaintiff was experiencing harassment due to her race or national origin. There is nothing to even show that Waypoint should have known that the neighbor caused the knife marks on the door. Therefore, Plaintiff fails to state a claim for a hostile housing environment based on race or national origin.

Furthermore, even if Plaintiff had pleaded sufficient facts for the Court to infer that Waypoint knew or should have known about illegal harassment, a circuit split is developing on when a landlord can be liable to a tenant for a hostile environment created by other tenants. The Seventh Circuit has held that a landlord can be liable under the FHA when it has actual notice of

tenant-on-tenant harassment based on a protected status. *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 864 (7th Cir. 2018). The Second Circuit, however, has held that a plaintiff fails to state a claim under the FHA for intentional discrimination by alleging that the landlord failed to respond to reports of race-based harassment by a fellow tenant. *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 70 (2d Cir. 2021) (en banc). The Tenth Circuit has not yet extended its hostile housing environment analysis to tenant-on-tenant conduct. *See Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993) (applying hostile environment analysis to a landlord's own conduct).

In the absence of guidance from the Tenth Circuit, the Court is inclined to agree with the Second Circuit. Landlords do not generally exercise the same degree of control over their tenants that employers exercise over their employees. *Francis*, 992 F.3d at 75-76. Thus, analogies from the hostile work environment context are of limited value. Property owners and landlords certainly have duties of care to those on their property from other sources besides the FHA. Thus, individuals who are harmed on another's property need not rely on the FHA as an omnibus solution. Thus, Plaintiff's claim would likely fail for this additional reason. The Court dismisses these claims.

Finally, Plaintiff alleges claims for intentional and negligent infliction of emotional distress under Kansas law. She bases these claims on Waypoint's failure to "hire the best Realtors to manage its rentals" and for its failure to supervise said realtors. The Court discussed the elements of intentional infliction of emotional distress above. To state a claim for negligent infliction of emotional distress, Plaintiff must plausibly plead that (1) she suffered physical injury, (2) as a direct result from the emotional distress caused by the defendant's negligence, and (3) the injury appeared within a short span of time after the emotional disturbance. *Majors v. Hillebrand*, 349 P.3d 1283, 1285 (Kan. Ct. App. 2015) (citations omitted).

Plaintiff cursorily asserts

> intentional infliction of emotional distress (IIED) and Negligence infliction of emotional distress (NEID) that is the State of Kansas tort law against defendant Waypoint Rockland West Owner, LLC ("Rockland West") and/or Waypoint Student Living, LLC in all claims asserted against it including as to paragraph 14 charges, it assisted failures to supervise as superior reapondeat [sic] and only hire the best Realtors to manage its rentals.

Doc. 85 at 30, ¶ 16. The "paragraph 14" that Plaintiff refers to merely states

> Waypoint Rockland West Owner, LLC and/or Waypoint student living, Inc., must respond to all claims asserted against Everest Campus West, LLC and Cardinal Group Management Midwest, LLC as landlord superior respondeat whose property or premises gave rise to the two Real Estate Agents' portion of this civil action, who managed its rental businesses.

*Id.* at 29, ¶ 14. Plaintiff has not alleged any facts to support her state law claims. Therefore, the Court dismisses these claims.

### C.   Plaintiff's Motions

Plaintiff moves to file a surreply to University Partners' motion to dismiss. Doc. 150. Plaintiff argues that University Partners raised new arguments or material in its reply, and thus a surreply is warranted. *Id.* at 1. Surreplies are disfavored. *See, e.g.*, *Dodson Int'l Parts, Inc. v. Williams Int'l Co.*, 2020 WL 4904049, at *1 (D. Kan. 2020). A surreply is not warranted here because University Partners did not improperly raise new arguments in its reply. *See id.* Thus, the Court denies Plaintiff's motion to file a surreply.[5] Plaintiff asks the Court in the alternative to strike University Partners' reply due to redundancy and immateriality. But University Partners' reply complied with the local rules and is not redundant nor immaterial. *See Bunn v. Perdue*, 966 F.3d 1094, 1099 (10th Cir. 2020). Therefore, the Court denies Plaintiff's request to strike.

---

[5]   Importantly, the Court's decision on University Partners' motion would not change even if it considered Plaintiff's surreply.

Finally, Plaintiff moves for review of the magistrate judge's denial of her motion for more time to amend her second amended complaint. Doc. 149.[6] The relevant scheduling order required Plaintiff to move to amend or add parties by December 1, 2021. Doc. 122 at 2. Plaintiff did not seek additional time to amend until December 29, 2021. Doc. 138. As relevant here, the magistrate judge ruled against Plaintiff because (1) Plaintiff's motion was deficient for not attaching a proposed amended complaint to her motion; (2) Plaintiff failed to show good cause under Federal Rule of Civil Procedure 16; and (3) even if Plaintiff had shown good cause, she failed to meet the standard under Federal Rule of Civil Procedure 15 for leave to amend her complaint. Doc. 143.

This Court considers denials of leave to amend dispositive. *See Wilson v. Wal-Mart Stores, Inc.*, 2008 WL 2622895, at *1 (D. Kan. 2008). The Court reviews a magistrate judge's decisions on dispositive motions de novo. Fed. R. Civ. P. 72(b)(3). After a scheduling-order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Rule 16(b)(4) and (2) satisfaction of the Rule 15(a) standard. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240-41 (10th Cir. 2014). Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To show good cause, the movant must show that she could not meet the scheduling deadline despite her best efforts. *Gorsuch*, 771 F.3d at 1240. The proponent of an untimely amendment bears the burden of showing good cause. *See id.* at 1241. Under Rule 15, once a party can no longer amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

---

[6]   Defendants oppose the motion. Doc. 156. Plaintiff's reply deadline has long passed. D. Kan. R. 6.1(d). The motion is ripe, and the Court considers the motion.

Here, Plaintiff undoubtedly failed to comply with the local rules because she did not attach her proposed amended complaint. D. Kan. R. 15.1. Pro se status does not excuse compliance with local rules. *Beams*, 335 F. Supp. 2d at 1139. Plaintiff also has not shown good cause for modification under Rule 16. If a plaintiff discovers new information or the relevant law changes, then a plaintiff can establish good cause to amend a scheduling deadline. *Gorsuch*, 771 F.3d at 1240. But when a plaintiff knew about the underlying conduct but simply failed to raise additional claims, the plaintiff's claims are barred. *Id.* Here, Plaintiff sought to add claims and parties that she forgot to include previously. Doc. 138 at 5, 10, 11-12. Plaintiff provides no reason why she could not have included other parties or claims in her prior complaints. Thus, she fails to establish good cause to enlarge the scheduling deadline.

Plaintiff argues that her unforeseen health issues and her living conditions have prevented her from complying with the amendment deadline despite her due diligence. Doc. 149 at 1-3. But this argument is unavailing. As the magistrate judge properly noted, Plaintiff previously moved for a stay in March 2021 due to essentially the same health issues, but she was still able to file her second amended complaint and numerous other filings and the motion was denied as moot. *See* Docs. 69, 83. And while her motion to amend has been pending, Plaintiff moved for a venue change and filed a timely reply to responses. Docs. 157, 162. While Plaintiff mentions in passing that she is now living in a homeless shelter, she gives no specifics as to how that has made prosecuting her case more difficult or when she expects those causes to resolve. *See* Doc. 149 at 2. Therefore, Plaintiff has failed to establish good cause for amending the scheduling deadline.

Moreover, even if Plaintiff had shown good cause, she has not satisfied the Rule 15 standard. Justice does not require leave to amend in this case. A court may deny leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated

9

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citation omitted). The magistrate judge correctly ruled that granting Plaintiff leave to amend would cause undue delay and prejudice to the opposing parties. Doc. 143 at 6. Plaintiff has already amended her complaint twice. Docs. 56 and 84. Her desire to add new defendants and claims will likely raise significant new issues and prompt significant delay. *Minter*, 451 F.3d at 1208 (stating prejudice most often occurs when an amendment would raise significant new factual issues). Therefore, the Court denies Plaintiff's motion for review.[7]

## III.    CONCLUSION

THE COURT THEREFORE ORDERS that University Partners' Motion to Dismiss (Doc. 131) is GRANTED. University Partners is dismissed from this case.

THE COURT FURTHER ORDERS that Waypoint's Motion to Dismiss (Doc. 135) is GRANTED. Waypoint is dismissed from this case.

THE COURT FURTHER ORDERS that Plaintiff's Motion for Leave to File a Surreply (Doc. 150) is DENIED.

THE COURT FURTHER ORDERS that Plaintiff's Motion to Seek Review of Magistrate's Ruling (Doc. 149) is DENIED.

IT IS SO ORDERED.

Dated: March 25, 2022                                 /s/  *Holly L. Teeter*
                                                      HOLLY L. TEETER
                                                      UNITED STATES DISTRICT JUDGE

---

[7]    To the extent Plaintiff asks the Court to remove the magistrate judge for partiality, this request is denied. It is up to each individual judge to "disqualify himself" according to the applicable law. 28 U.S.C. § 455. Even if this issue was before the Court, the undersigned discerns no partiality on the part of the magistrate judge requiring recusal.